UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TERESA D. PITTS                                                                                         PLAINTIFF

       VS.                              Civil No. 2:15-cv-02178-PKH-MEF

NANCY A. BERRYHILL,                                                                                DEFENDANT
Commissioner of Social Security Administration[1]

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Teresa D. Pitts, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.   Procedural Background:

Plaintiff filed her application for DIB on February 22, 2013, alleging an onset date of February 9, 2013, due to back problems, shoulder pain and numbness, fibromyalgia, diverticulosis, migraines, vision problems, memory problems, episodes of passing out and problems with concentration. (T. 60) Plaintiff meets the insured status requirements through

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

December 31, 2017. (T. 12) The Commissioner denied her application initially and on reconsideration. (T. 83, 90) At Plaintiff's request, Administrative Law Judge ("ALJ"), Hon. Edward M. Starr, held an administrative hearing on February 27, 2014. (T. 25-58) Plaintiff was present and represented by counsel.

On July 22, 2014, ALJ Starr issued a decision finding Plaintiff not disabled. (T. 10-19) The ALJ found that Plaintiff had not performed substantial gainful activity since her February 9, 2013, alleged onset date. (T. 12) The ALJ found that Plaintiff had severe impairments of headaches and fibromyalgia. (T. 12) The ALJ determined that Plaintiff's impairments restricted her to sedentary work with a requirement that she avoid hazards, including unprotected heights and heavy moving machinery. (T. 14) The ALJ held that Plaintiff could not perform her past relevant work, and did not make a finding of transferable skills. (T. 17-18)

The vocational expert ("VE") identified examples of unskilled (SVP 2) sedentary work that an individual with the same age, education, vocational profile, and the specified functional limitations could perform. (T. 18, 54-55) The ALJ considered the VE's testimony and determined that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy. (T. 19) Accordingly, the ALJ denied Plaintiff's February 22, 2013, application at step five of the sequential evaluation process. (T. 19) On July 6, 2015, the Appeals Council declined to review the ALJ's decision, which rendered it the final administrative decision of the Commissioner. (T. 1-5) On September 2, 2015, Plaintiff timely filed this action seeking judicial review of the ALJ's decision. (ECF No. 1) This matter is before the undersigned for Report and Recommendation. Both parties have filed briefs, and the case is ready for decision. (ECF Nos. 9 & 13)

## II. Applicable Law:

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

3

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if she reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III.  Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the AOD on February 9, 2013, through the date of his decision on July 22, 2014. Plaintiff raises three issues on appeal, which can be summarized as: (A) the ALJ failed to fully and fairly develop the record; (B) the ALJ erred in assessing the credibility of Plaintiff's subjective complaints; and, (C) the ALJ erred in his RFC determination. (ECF No. 9, pp. 8-17)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

**Duty to Fully and Fairly Develop the Record:**

Plaintiff asserts the ALJ failed to fully and fairly develop the record by not requesting mental, orthopedic, rheumatologic and neurologic consultative examinations ("CEs"). (ECF No. 9, p. 9) The Court disagrees.

The ALJ owes a duty to a Plaintiff to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). After reviewing the record, the undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision, thus remand is unnecessary.

"A disability claimant is entitled to a full and fair hearing under the Social Security Act." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (internal quotations and citation omitted). Where "the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," the claimant has received a "full and fair hearing." *Id.* (internal quotations and citation omitted).

In a prehearing memorandum submitted to the ALJ, Plaintiff stated there had been no consultative examinations and no examining source opinion evidence to support a residual functional capacity determination. (T. 274) She requested mental and orthopedic CEs; a rheumatologic CE due to her fibromyalgia diagnosis; and, a neurologic CE "in light of the

5

treating source's statement suggesting referral to a neurologist combined with Claimant's lack of financial resources to afford that evaluation." (T. 274) The ALJ acknowledged Plaintiff's request for additional CEs at the hearing, and advised he would consider the request subsequent to the hearing. (T. 29) The ALJ issued his unfavorable decision without ordering the requested CEs.

The ALJ found Plaintiff's neurological disorder (headaches) and musculoskeletal disorder (fibromyalgia) were severe impairments. (T. 12) He noted Plaintiff's headaches could reasonably be expected to cause pain, vertigo, visual disturbances and other symptoms that could limit her ability to perform work activity. (T. 12) The ALJ also found Plaintiff's fibromyalgia could be expected to cause pain and limit her ability to sit, stand, walk, lift, and carry. (T. 12) Based upon the medical evidence and Plaintiff's testimony, the ALJ determined Plaintiff had only mild limitations in connection with her activities of daily living, social functioning, and concentration, persistence or pace; therefore, her depression and anxiety were non-severe. (T. 13)

Four state agency medical consultants reviewed the medical evidence in 2013. On April 12, 2013 and June 25, 2013, Dan Donahue, Ph.D., and Jon Etienne Mourot, Ph.D., noted, respectively, the medical evidence of record showed Plaintiff was receiving medication for depression from her primary care physician, Dr. Noonan, and was satisfied with her symptom control. (T. 63-64, 76-77) On April 11, 2013 and June 25, 2013, Alice Davidson, M.D., and Janet Cathey, M.D., found, respectively, that the medical evidence supported a light RFC with hazard restrictions. (T. 65-67, 78-80)

Dr. Victor Vargas, an orthopedic surgeon at Arkansas Specialty Orthopaedics, examined Plaintiff on June 2, 2011 as a new patient complaining of low back pain persisting for five months. (T. 15, 399) Dr. Vargas' examination showed a normal range of motion with normal

muscle tone; Spurling's and Tinel's testing results were negative; and, there were no significant paraspinal trigger points shown (which is inconsistent with a diagnosis of fibromyalgia). (T. 15, 399) Dr. Vargas noted Plaintiff had improved with medications and steroids and recommended non-operative treatment with physical therapy and oral steroids to address Plaintiff's pain symptoms. (T. 397)

On August 26, 2011, Dr. Vargas noted Plaintiff was taking medication prescribed by Dr. Noonan that "seems to help with the symptomatology." (T. 394) Dr. Vargas prescribed a muscle relaxer and physical therapy. (T. 394) He further advised Plaintiff to be active on activities of daily living as tolerated and advised against bed rest. (T. 394) Dr. Vargas followed up with Plaintiff on September 7, 2011, and, upon examination, noted Plaintiff had a normal gait, full range of motion and normal muscle tone in her neck, decreased ROM in her thoracic spine with no overt signs or instability; and, a normal neurological exam. (T. 390) Dr. Vargas injected Plaintiff's neck, and she expressed a more than 50% decrease in her symptoms. (Tr. 391)

The ALJ further reviewed radiological evidence of the claimant's thoracic spine performed on May 23, 2011, showing degenerative disc disease with endplate osteophytes at T6-T9, a midline disc protrusion at T6-T7 and a small, right-sided disc protrusion at T2-T3 that did not produce significant central canal stenosis, deformity of the spinal cord, or foraminal narrowing with impingement of the nerve roots. (T. 15, 363) A CT scan of Plaintiff's brain was conducted by Dr. Eric Magill on order from Dr. Robert Noonan on July 30, 2012, showing no abnormalities. (T. 15, 303)

Plaintiff was examined by Dr. Janice M. Keating, a neurologist, on September 4, 2012 for neck and back pain, as well as "passing out spells." Dr. Keating noted Plaintiff never lost

consciousness, had any true syncope, tonic-clonic seizure activity, nor any bowel or bladder dysfunction during these episodes. (T. 16, 285) Dr. Keating also noted that Plaintiff reported seeing Dr. Vargas about a year prior, and he did not recommend surgery. (T. 285) Plaintiff reported to Dr. Keating that when experiencing a "spell" she can sit down and will feel almost back to normal in about 20 minutes. (T. 285)

Dr. Keating's examination showed generally normal results with slight decreased sensation on the left face and arm. (T. 287) Dr. Keating concluded that Plaintiff had some psychogenic overlay with her back pain and passing out spells of uncertain etiology. (T. 288) Plaintiff was diagnosed with episodic migraine headaches and anxiety order. (T. 288) Evaluation with an MRI scan of the brain and cervical spine was planned. (T. 288) Plaintiff stated the MRI scan was not completed due to a lack of insurance; however, an extensive examination including a CT scan of the brain was performed on January 30, 2013 by Dr. Magill and showed no abnormalities. (T. 355-61)

Plaintiff saw Dr. Joseph Dunaway, D.O., on November 8, 2012, complaining of pain all over, stiff muscles, and memory loss. (T. 313) Dr. Dunaway diagnosed joint pain in multiple sites and generalized pain. (T. 314) He prescribed a Savella titration pack and planned to check Plaintiff's labwork. (T. 314) On December 31, 2012, Dr. Noonan reviewed Dr. Keating's findings and ordered rheumatoid profile testing which showed negative results. (T. 385) He offered a referral to a neurologist which the claimant declined due to lack of insurance. (T. 380) Dr. Noonan directed Plaintiff to return if problems or concerns developed.

In addition to the medical records, the ALJ considered Plaintiff's testimony, and records submitted to the Commissioner, in assessing Plaintiff's RFC. The undersigned finds the record

contained sufficient evidence for the ALJ to make an informed decision. The medical evidence shows Plaintiff's anxiety and depression were generally controlled by medication; rheumatoid profile testing was negative; and, Plaintiff was treated by both a neurologist and an orthopedic surgeon.

In order for the Court to reverse or remand this case, the Plaintiff must demonstrate unfairness or prejudice resulting from the ALJ's alleged failure to fully develop the record, and Plaintiff has failed to meet that burden. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (absent unfairness or prejudice, we will not reverse or remand). Plaintiff made no showing of prejudice or showing that additional consultative examinations would have suggested greater functional limitations during the relevant time period than supported by the medical evidence of record.

**RFC Determination:**

Plaintiff argues the ALJ erred in his RFC determination because he failed to properly assess Plaintiff's credibility and failed to fully develop the record specifically in connection to any manipulative or mental restrictions. (ECF No. 9, p. 16-17)

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence,

including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004).

In assessing Plaintiff's RFC, the ALJ considered: Plaintiff's testimony at the hearing; disability and function reports; treatment records from Drs. Noonan, Vargas, Keating, and Dunaway; the radiological evidence; and, the state agency medical consultative examinations. (T. 14-17)

The ALJ conducted a thorough assessment of Plaintiff's alleged pain and limitations, and he gave good reasons for his determination that Plaintiff's statements concerning the intensity, persistence and limitations of her symptoms were not entirely credible or consistent with the objective medical evidence. The ALJ considered Plaintiff's treatment and noted she received conservative treatment and was prescribed medication. (T. 15-17) Plaintiff denied side effects of her medications on December 31, 2013, and she reported in March 2013 that she had never had to discontinue a medication due to side effects. (T. 196, 372-73) The ALJ noted that Plaintiff's

medications of Ultram and Flexeril have common side effects of sleepiness and fatigue and precluded Plaintiff from performing work that required exposure to hazards. (T. 14, 16)

The ALJ noted that Plaintiff had 4/5 strength in both upper extremities according to her treating physician, Dr. Noonan, on December 31, 2013. (T. 16-17, 375) Plaintiff worked until February 2013, and the ALJ noted that the exertional demands of her PRW exceeded her current RFC. (T. 17)

The ALJ is in the best position to evaluate a claimant's credibility, and the Court finds the ALJ provided sufficient reasons for determining Plaintiff's complaints were less than fully credible in connection with her alleged pain and functional limitations. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ's RFC determination was consistent with the medical records, and he adequately accounted for Plaintiff's limitations. While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). Considering all the evidence of record, the undersigned finds the RFC determined by the ALJ is supported by substantial evidence.

## IV.   CONCLUSION

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's Decision denying the Plaintiff benefits. It is recommended that the ALJ's Decision be affirmed, and that Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

**objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 13th day of February, 2017.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE